ADAMS, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| VALLEY CITY STEEL, LLC , | ) |
| Plaintiff, | ) CASE NO. 5:05CV1902 ) ) |
| v. | ) JUDGE JOHN R. ADAMS ) |
| LIVERPOOL COIL PROCESSING, INC., et al., | ) MEMORANDUM OPINION ) AND ORDER ) |
| Defendants. | ) |

Plaintiff Valley City Steel, LLC[1] ("plaintiff" or "debtor in possession") brings this action against defendants[2] to recover damages for constructive fraud, in violation of Ohio Rev. Code §§ 1336.04(A)(2)(a) and (b), and for breach of contract.

Pursuant to Fed. R. Civ. P. 56 and Bankruptcy Rule 7056, plaintiff seeks partial summary judgment on its claims of breach of contract against LCP, Shiloh Corp., Wellington, and Shiloh Automotive. (Docket No. 13). Defendants have filed a brief in opposition, and plaintiff has filed a reply. (Docket Nos. 16 and 18, respectively). In connection with its dispositive motion,

---

[1] For convenience, and in conformance with the parties' pleadings, the Court will also use the term "plaintiff" to refer to the debtor.

[2] The term "defendants" shall be used to refer to all of the party defendants collectively. Where individual defendants are discussed, the Court shall employ the designations agreed to by the parties in their First Set of Stipulations. (Docket No. 8). Specifically, the individual defendants shall be designated as follows: Liverpool Coil Processing, Inc. ("LCP"), VCS Properties LLC ("VCS Prop."), Sectional Stamping Inc., t/d/a Shiloh Industries, Inc. Wellington Stamping Division ("Wellington"), Shiloh Corporation ("Shiloh Corp."), Shiloh Industries, Inc. ("Shiloh"), and Shiloh Automotive, Inc. ("Shiloh Automotive").

plaintiff has also filed a motion to strike the affidavit of Thomas M. Dugan, which was offered by defendants. (Docket No. 22). Defendants oppose the motion to strike. (Docket No. 23).

Similarly, defendants seek partial summary disposition in their favor on plaintiff's claims of fraud, and on their defense of setoff. (Docket No. 14). Plaintiff opposes the motion, and defendants have replied. (Docket Nos. 17 and 19, respectively).

The Court finds that each claim in the Complaint is fraught with genuine issues of material fact. Consequently, and for the specific reasons that follow, plaintiff's motion for partial summary judgment is denied, and defendant's motion for partial summary judgment is granted, in part, and denied, in part. Additionally, plaintiff's motion to strike is denied.

## I. **FACTUAL[3] AND PROCEDURAL BACKGROUND**

The debtor,[4] an Ohio limited liability company, was formed by Viking Steel LLC ("Viking Steel") for the purpose of acquiring certain assets from Value City Steel Company ("VCS Company"). VCS Company, in turn, was a wholly owned subsidiary of Shiloh Corp.

In late 2000 or early 2001, Shiloh Corp. entered into negotiations with Viking Steel. As a result of these negotiations, an Asset Purchase Agreement was entered into on May 29, 2001 between plaintiff and VCS Company. Plaintiff acquired substantially all of the personal property and some of the intangible assets of VCS Company. Plaintiff also agreed to assume certain liabilities to trade creditors and employees of VCS Company.

---

[3] All facts set forth in this section of the Court's Memorandum Opinion are taken from the First Set of Stipulations Entered by the Parties. (Docket No. 8).

[4] The debtor's original corporate name was Valley City Steel-7779 LLC. The debtor changed its name to VCS LLC on August 9, 2001.

2

On July 31, 2001, a series of transactions took place as contemplated by the Asset Purchase Agreement. In one such transaction, VCS Company entered into a Membership Interest Subscription Agreement, wherein VCS Company received a 49 % interest in plaintiff in exchange for the assets identified in the Asset Purchase Agreement. The value of the transferred assets was set at $12,000,000. In another transaction on July 31, 2001, plaintiff entered into a Lease Agreement with VCS Company for the real property on which plaintiff was to conduct its business.

Plaintiff also obtained various loans from Comerica Bank to fund the cash purchase portion of the acquired assets.[5] In exchange for these loans, Comerica obtained liens upon plaintiff's assets. On this same day, defendant Shiloh, to induce Comerica Bank to extend financing to plaintiff, executed an agreement with Comerica Bank whereby it promised to waive its right to setoff against plaintiff. From the Comerica Bank loans, the sum of $12,400,000 was transferred to defendants. In April 2002, plaintiff was declared in default of the Comerica loans.

On November 27, 2002, plaintiff filed a voluntary Petition for Relief under Chapter 11 of the United States Bankruptcy Code and in the United States Bankruptcy Court for the Northern District of Ohio. On June 25, 2003, the Bankruptcy Court entered an order approving the sale of certain of plaintiff's assets for the purchase price $5,700,000. Of that amount, $5,000,000 was paid to Comerica Bank, which served to satisfy the Revolving Note and the Term Note

---

[5] The loan agreement with Comerica provided for Comerica to extend financing to the debtor through three notes: (1) a revolving credit note in the maximum amount of $9,000,000; (2) a term note in the amount of $4,100,000.00; and (3) a mortgage note in the amount of $4,900,000.

3

obligations owed by plaintiff.

Plaintiff originally filed the present complaint with the U.S. Bankruptcy Court for the Northern District of Ohio on July 13, 2004. *See* Case No. 02-55516. The complaint asserts the following claims: (1) constructive fraudulent transfer in violation of Ohio Rev. Code § 1336.04(A)(2)(a); (2) constructive fraudulent transfer in violation of § 1336.04(A)(2)(b); (3) action for recovery under 11 U.S.C. § 550(a); (4) breach of contract against LCP; (5) breach of contract against Shiloh Corp.; (6) breach of contract against Wellington; and (7) breach of contract against Shiloh Automotive.

On August 25, 2004, Defendants sought withdrawal of the reference from the bankruptcy court. The Court granted defendants' motions for withdrawal on August 2, 2005, and directed that all further proceedings were to take place in the United States District Court for the Northern District of Ohio. Defendants subsequently sought relief from the automatic stay imposed, and, on November 2, 2005, the Court granted this relief, in part, extending to defendants the right to assert their affirmative defense of setoff.

On December 5, 2005, plaintiff filed its motion for partial summary judgment on the breach of contract claims. (Docket No. 13). Defendants filed their motion for partial summary judgment on the fraud claims and on the issue of setoff the following day. (Docket No. 14). Both motions have been fully briefed and are at issue.

## II. **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56, made applicable herein through Bankruptcy Rule

4

7056, governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . . Rule 56(c).

Rule 56(e) specifies the materials properly submitted in connection with a motion for summary judgment:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . . The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970); *White v. Turfway Park Racing Ass'n, Inc.,* 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable

5

evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), *citing Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F.Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

**III. DISCUSSION AND LAW**

**A. Fraudulent Transfer Claims**[6]

In the first two counts of the complaint, plaintiff seeks to recover, under Ohio Rev. Code §§ 1336.04(A)((2)(a) and (b), certain property that it claims was the subject of alleged fraudulent transfers. Underlying these claims are the asset, cash, and capital transfers between plaintiff, VCS Company, and Shiloh Corp.

Plaintiff does not argue that defendants acted with actual intent to defraud plaintiff or its creditors. Consequently, its state fraud claims are governed by § 1336.04(A), which provides, in part:

> A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following ways:
>
> > (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and if either of the following applies:
> >
> > > (a) The debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;
> > >
> > > (b) The debtor intended to incur, or believed or reasonably should have

---

[6]Plaintiff seeks to strike the affidavit of Shiloh's treasurer, Thomas M. Dugan, which was offered by defendants as Exhibit F to its brief in opposition to plaintiff's motion for partial summary judgment. (Docket No. 16, Exh. F). Defendants originally filed Mr. Dugan's unsigned affidavit with its opposition brief and, then, on February 17, 2006, sought and received leave to substitute the signed original affidavit. (Docket Nos. 21 and 22). It is undisputed that, except for the signature of Mr. Dugan, the two affidavits are identical. The motion to strike is denied. While plaintiff claims, without any support, that the affidavit creates "evidentiary issues," plaintiff cannot demonstrate that it was prejudiced in any way by the Court's decision to permit the substitution. Moreover, the Court finds that defendants' explanation for the delay in procuring Mr. Dugan's signature, the press of Mr. Dugan's business affairs, is sufficient. (*See* Docket No. 23, Exh. A, Affidavit of Jeffrey W. Krueger).

7

> believed that he would incur, debts beyond his ability to pay as they became due.

Defendants maintain that plaintiff's fraud claims cannot survive summary judgment because plaintiff cannot meet its burden of proving that the debtor made the transfers "without receiving a reasonably equivalent value in exchange for the transfer[s]." § 1336.04(A)(2). Defendants also argue that plaintiff cannot establish that the debtor was about to engage in a business for which its remaining assets were unreasonably small in relation to the business or transaction, or that the debtor intended to incur debts beyond its ability to pay as they became due. *See* §§ 1336.04(A)(2) (a) and (b).

### 1. <u>Reasonably Equivalent Value</u>

According to defendants, the record demonstrates that, absent any genuine issues of material fact, plaintiff received reasonably equivalent value in exchange for the business transfers. The term "reasonably equivalent" is not defined in the Bankruptcy Code. In determining whether value is reasonably equivalent, courts look to the consideration received by a debtor rather than the value given by the transferee. *Congrove v. McDonald's Corp. (In re Congrove)*, 2005 Bankr. LEXIS 1599 (6th Cir Aug. 31, 2005). *See Harman v. First Am. Bank (In re Jeffrey Bigelow Design Group)*, 956 F.2d 479, 484 (4th Cir. 1992). Moreover, "[i]t is clear that the debtor need not collect a dollar-for-dollar equivalent to receive reasonably equivalent value." *Butler Aviation Int'l, Inc. v. Whyte*, 6 F.3d 1119, 1125-26 (5th Cir. 1993).

The Sixth Circuit summarized the law regarding reasonably equivalent value as follows:

> In assessing whether a challenged transfer is supported by reasonably equivalent value, courts generally compare the value of the property transferred with the value of that received in exchange for the transfer . . . Thus, the test used to determine whether a transfer was supported by reasonably equivalent value focuses on whether there is a

8

>reasonable equivalence between the value of the property surrendered and that which was received in exchange.

*Corzin v. Fordu* (*In re Fordu*), 201 F.3d 693, 707-08 (6th Cir. 1999). The debtor bears the burden of proving that it did not receive a reasonable value in return for the transfers. *CLC Corp. v. Citizens Bank (In re CLC Corp.)*, No. 86-6213, 1987 WL 38995, at *3 (6th Cir. Nov. 19, 1987).

Looking first to the value of the property transferred by plaintiff, defendants note that, under the Asset Purchase Agreement, plaintiff paid $12,400,000 in cash out of loans from Comerica. (Docket No. 8, para 28). In this same transaction, VCS Company also received a 49 % membership interest in plaintiff in exchange for the portion of the purchased assets that were greater in value than the purchase price. (*See* Exhibit A to the Membership Interest Subscription Agreement, Docket No. 14, Exh. B). Relying on the Operating Agreement of plaintiff, defendants maintain that the assessed value of these transferred assets was $11,913,725. (*See* Exhibit A to the Operating Agreement, Docket No. 14, Exh. C). According to defendants, these two sums added together, $24,313,725, represent the total amount transferred from plaintiff to defendants.

As for the value of the assets received by plaintiff in the transfers, defendants direct the Court's attention to the appraisal by Williams & Lipton Company, dated March 12, 2001. (Docket No. 14, Exh. D). Defendants note that this appraisal sets the fair market value of the equipment, machinery, and other assets plaintiff received at $19,374,935. Defendants also point to the fact that they collectively secured up to $7,000,000 of plaintiff's debt to Comerica Bank by giving Comerica the Open-End Mortgage. (Docket No. 8, No. 26). In addition, defendants note that plaintiff purchased the working capital of VCS Company under the terms of the Asset

9

Purchase Agreement. Relying on the Working Capital Statement, this working capital was valued at $5,550,000. Because plaintiff received a total of $31,924,935 in tangible and intangible assets and transferred $24,313,725 in exchange, defendants conclude that the transfer was supported by reasonably equivalent value.

Plaintiff takes issue with this legal conclusion, and challenges the asset values relied upon by defendants. Plaintiff suggests that the profitability of VCS Company had declined steadily over time, citing reports to the Securities and Exchange Commission submitted by Shiloh. Plaintiff also maintains that the purchase price in the Asset Purchase Agreement was not negotiated at arms length, but, rather, was set by Shiloh. For support, plaintiff relies on the "undisputed" deposition testimony of Patrick James, wherein he stated that the price and structure of the sale was controlled by Shiloh.[7]

Plaintiff also questions the reliability of the fair market value set forth in the Williams & Lipton appraisal inasmuch as it was observed in the appraisal, itself, that there was a lack of actual sale comparable data to adequately account for all costs associated with the equipment. (Docket No. 14, Exh. D). Moreover, plaintiff underscores the fact that, in a second pre-sale appraisal, Rosen & Company set the value for all of the assets transferred at only $6,800,000. Given the fact that less than sixteen months later, plaintiff was in bankruptcy, plaintiff contends that the asset valuation assigned by defendants is grossly inflated and unreliable.

---

[7] Defendants challenge the "undisputed testimony" of Patrick James by pointing to the deposition testimony of Michael Klinginsmith, Plaintiff's former chief executive officer, who testified that the price was the result of a series of negotiations between himself, Mr. James, and others, and that Shiloh did not merely present a "take it or leave it number." (Docket No. 14, Exh. 7, Depo. of Klinginsmith at 7).

10

It is clear that there is much dispute as to the values to be assigned to the transferred assets. Given the existence of numerous genuine issues of material fact relating to the issue of "reasonably equivalent value," the Court must deny defendants summary judgment on the fraud claim.

### 2. Remaining Assets Unreasonably Small

Disputed facts also abound with respect to the issue of whether plaintiff's remaining assets were unreasonably small. Under § 1336.04(A)(2)(a), a debtor attempting recovery must prove that the transfer left the debtor with "unreasonably small assets, compared to his historic level of assets or cash flow and current needs." *Aristocrat Lakewood Nursing Home v. Mayne*, 133 Ohio App.3d 651, 688 (Ohio Ct. App., Cuyahoga County 1999). A debtor is not entitled to an invalidation of the transfer, however, merely because he subsequently happened to encounter financial problems. *Id.*

In support of their argument that plaintiff's remaining assets were not unreasonably small, defendants contend that plaintiff was left with substantially the same net assets as before the sale. Moreover, defendants claim that plaintiff had sufficient assets as compared to its cash flow and current needs. Specifically, defendants observe that, as a result of the sale, plaintiff had working capital of approximately $5,550,000 and had at least $3,000,000 in working capital under its loan agreements with Comerica Bank. (Docket No. 14, Exh. 6, Davis Dep. at 33)[8]. Indeed,

---

[8] Plaintiff takes issue with defendants' conclusion that plaintiff was left with sufficient working capital following the sale. Specifically, plaintiff relies on the deposition of Steve Davis. Davis testified that while, pursuant to the sale, plaintiff acquired approximately $5,900,000 in receivables, it also assumed approximately $6,300,000 in liabilities. (Docket No. 14, Exh. 6, Davis Depo. at 52-54).

11

defendants look to the fact that Comerica had no reservation about extending credit to plaintiff.[9] (Docket No. 14, Exh. 6, Davis Dep. at 49-50).

In contrast, plaintiff relies upon the report of its expert witness, Charles Deutchman, wherein he opined that the sale and transfer did not create capital for the operation of the company. (Docket No. 17, Exh. 1 at 2). It is the contention of plaintiff's expert that plaintiff acquired a company that had been in substantial decline, and that by virtue of the sale had $12,000,000 drained from it at the time of closing.[10] (Docket No. 17, Exh. 1 at 2). In fact, Mr. Deutchman believed that the only contribution made to plaintiff for the company was the $200,000 contribution by Viking Steel's principal and $11,900,000 in assets. Moreover, plaintiff's expert concluded that the only available cash was borrowed from Comerica. (Docket No. 17, Exh. 1 at 2). According to plaintiff, the condition of the company at the time of transfer, and the cash and capital available to plaintiff following the transfer demonstrate that plaintiff was left with unreasonably small capital.

Again, the record is filled with disagreement as to even the value to be assigned to the assets and working capital available to plaintiff following the transfer. At the risk of overstating the obvious, the Court cannot reach the issue of whether, as a matter of law, the remaining assets were unreasonably small under § 1336.04(A)(2)(a) if factual disputes exist as to the values to be

---

[9] Of course, the fact that Shiloh entered into an agreement with Comerica Bank whereby Shiloh agreed to waive its right to setoff against plaintiff in exchange for Comerica Bank's willingness to extend credit to plaintiff calls into question Comerica Bank's confidence as to plaintiff's financial situation at the time of the sale.

[10] In their reply, defendants point out that while VCS Company showed a net loss for the 2000 fiscal year, it generated more than $1,000,000 of net income for both the 1998 and 1999 fiscal years. (Docket No. 19 at 3).

assigned to these assets. Consequently, the issue of "unreasonably small assets" must be resolved at trial where the testimony of experts and the principal players can be weighed.

### 3. Debtor's Intent

Nor can it be said that summary judgment would be appropriate under § 1336.04(A)(2)(b), which provides for the nullification of transfers where the "debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due." In support of its request for summary disposition, defendants return to the deposition testimony of plaintiff's chief executive officer. In his deposition, Mr. Klinginsmith testified that, at the date of closing of the sale, plaintiff did not have reason to know that it would incur debts beyond its ability to pay, and that if plaintiff had such a concern, the sale would never have gone through. (Docket No. 14, Exh. 7, Klinginsmith Depo. at 120-121).

Plaintiff argues, however, that the Court must look past plaintiff's management team in ascertaining whether the requisite intent was present. Plaintiff invites the Court to consider the deposition testimony of Steve James, a principal in Viking Steel, which provided that all of the financial data supporting the sale, and the structure and price of the sale, itself, came from Shiloh. Plaintiff asserts that what Shiloh and other related defendants, partners in this venture, knew about VCS Company cannot be ignored in determining whether intent to incur debt beyond the debtor's ability to repay was present. According to plaintiff, the fact that the structure of the sale was not the result of genuine negotiations demonstrates that the debtor should have reasonably believed that it would not be able to meet its obligations following the sale. The weight to be given to evidence regarding the structure of the sale, and any inferences the debtor should have drawn with respect to its likelihood of meeting future financial obligations, however, are issues properly left for trial.

Viewing the record in a light most favorable to plaintiff, as the Court must do on summary

13

judgment, the Court finds countless legitimate factual disputes on the ultimate issues of reasonable value, unreasonably small capital, and intent. *See White*, 909 F.2d at 943-44. As such, defendants' motion for partial summary judgment on Counts I and II of the Complaint is hereby denied.[11]

### B. Breach of Contract Claims

In its motion for partial summary judgment, plaintiff seeks summary disposition in its favor on its claims of breach of contract against defendants LCP, Shiloh Corp., Wellington, and Shiloh Automotive. In support of its motion, plaintiff argues that it has set forth undisputed evidence establishing the elements of the account claims against each of the above-named defendants; namely, the existence of a contract, performance by the plaintiff, breach by each defendant, and loss to plaintiff. *See Am. Sales, Inc. v. Boffo*, 71 Ohio App.3d 168, 175 (Ohio Ct. App., Montgomery County 1991). Pointing to the accounts receivable lists, plaintiff concludes that it has proven account claims against each defendant as follows:

> against LCP in the amount of $ 1,087.50
> against Shiloh in the amount of $ 878,196.00
> against Wellington in the amount of $ 279,191.69
> against Shiloh Automotive in the amount of $ 51,680.09.[12]

(Docket No. 13, Exh. 2). According to plaintiff, this showing entitles it to judgment as a matter of law on its contract claims.

---

[11]In their motion for partial summary judgment, defendants also sought summary disposition of plaintiff's claim to set aside the transfers under 11 U.S.C. § 550(a). Defendants failed, however, to brief the issues relating to this claim. Consequently, the argument for summary judgment on this claim is waived. Nonetheless, the Court observes that the disputed facts surrounding the asset sale would have precluded summary judgment in defendants' favor on this claim, as well.

[12]The claim held by plaintiff against Shiloh Automotive is not currently before this Court inasmuch as it has been referred to arbitration.

14

### 1. **<u>Setoff</u>**

In response to plaintiff's motion for partial summary judgment, and in support of their own request for summary judgment on the contract claims, defendants assert the affirmative defense of setoff. Specifically, defendants argue that they have a common law right to setoff against any amounts that plaintiff claims are due and owing.

Setoff is "that right which exists between two parties, each of whom under an independent contract owes a definite amount to the other, to set off their respective debts by way of mutual deduction." *Witham v. South Side Building & Loan Ass'n.*, 133 Ohio St. 560, 562 (1938). The application of a setoff is permissive and lies within the equitable discretion of the trial court. *DuVoisin v. Foster* (*In re Southern Indus. Banking Corp*.), 809 F.2d 329, 332 (6th Cir. 1987).

The Bankruptcy Code, in 11 U.S.C. § 553, states that:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . .

Section 553 does not create a right of setoff, but preserves state law setoff rights. *Slone-Stiver v. Mazer Ciro. (In re Interstate Graphics),* 223 B.R. 116, 124 (Bankr. S.D. Ohio 1998). Ohio law recognizes such a right. *See Roberds, Inc. v. Lumbermen's Mut. Cas. (In re Roberds)*, 285 B.R. 651, 658 (Bankr. S.D. Ohio 2002) ("Under Ohio law, a setoff is that right which exists between two parties, each of whom under an independent contract owes a definite amount to the other, to setoff their respective debts by way of mutual deduction."). *See e.g., Baker v. National City Bank of Cleveland*, 511 F.2d 1016, (6th Cir. 1975) (applying Ohio law to claim for setoff).

In order for a creditor to exercise a state law right of setoff under § 553, the creditor must show:

(1) a debt owing by the creditor to the debtor which arose before the commencement of

15

>the [bankruptcy] case; (2) a claim of the creditor against the debtor which also arose before the commencement of the [bankruptcy] case; and (3) the debt and claim must be mutual obligations.

*Waldschmidt v. Columbia Gulf Transmission Co. (In re Fulghum Const. Corp.)*, 23 B.R. 147, 157 (Bankr. M.D. Tenn. 1982). *See In re Roberds*, 285 B.R. at 656 (Bankr. S.D. Ohio 2002).

With respect to the first element of setoff, there is no dispute that the debts owed by defendants to debtor, which grew out of the asset sale, arose well before the bankruptcy petition was filed by plaintiff.[13] (Complaint-Counts IV, V, and VI).  As such, the first element necessary to establish a right of setoff under § 553 has been satisfied.  Similarly, the claims of LCP, Shiloh Corp., and Wellington against the debtor, which arose out of that same set of transactions, also predate the filing of the bankruptcy petition.  The Court finds that the third element, mutuality, also exists inasmuch as the debts are owing between two parties in the same right and in the same capacity. *See  In re Roberds*, 285 B.R. at 659; *In re Morristown Lincoln-Mercury Inc.*, 42 B.R. 413, 415 (Bankr. E.D. Tenn. 1984)

To establish these amounts, defendants turn to Schedule F of plaintiff's bankruptcy petition, which identifies the creditors holding unsecured non-priority claims against the debtor at the time the  case was filed and the amount of each debt. (Docket No. 16, Exh. J).  Plaintiff challenges these amounts, noting, first, that defendants should have filed a proof of claim to establish the amounts of these debts.  Failing to do so, plaintiff argues that defendants may not enjoy the presumption of the amount and the validity of their claims which is accorded a creditor filing a proof of claim.  In addition, plaintiff criticizes defendants' reliance on Schedule F for proof of the amount of their claims against the debtor.  According to plaintiff, this document is

---

[13]In their brief in opposition to plaintiff's motion for partial summary judgment, defendants do indicate, without analysis, that the amounts owed by defendants to plaintiff are in dispute. (Docket No. 16 at p. 7).  Still, defendants adopt plaintiff's numbers for purposes of showing satisfaction of the first element for setoff.

16

not proof because the schedules list the amounts owed to creditors as "unliquidated."

It is true that a claim in bankruptcy is "unliquidated" until final fixation of the amount of liability. *See United States v. Sullivan*, 19 F. Supp. 695, 698 (D.C. W.D.N.Y.1937). However, proof of a right to payment, "whether or not such a right is reduced to judgment, liquidated, *unliquidated,* fixed, contingent, matured, unmatured, undisputed, legal, equitable, secured, or unsecured. . . ." establishes a claim for purposes of setoff. *In re Morristown*, *Lincoln-Mercury, Inc*., 42 B.R. at 416 (emphasis added). Nonetheless, the Court finds, as even defendants concede,[14] that there is a genuine issue of material fact with respect to the amounts owed by the debtor. (Docket No. 19 at p. 14). While defendants' showing is sufficient to stave off summary judgment in favor of plaintiff, it is insufficient to establish their right to summary disposition in their favor on these claims. Defendants have established their right to setoff, but the amount of this setoff must be proven at trial.

### 2. Waiver of the Right to Setoff

Finally, plaintiff argues that, even if defendants had a common law right to setoff, defendants waived that right by contract. On July 31, 2001, in connection with other transactions related to the sale of VCS Company, defendant Shiloh entered into a letter agreement with Comerica Bank and plaintiff whereby Shiloh agreed to waive any setoff and recoupment rights against plaintiff in exchange for Comerica Bank's willingness to extend credit to plaintiff. (Docket No. 17, Exh. 2). Plaintiff argues that this waiver precludes defendants' affirmative defense of setoff.

The Court does not agree. The Letter Agreement specifically provides that it is being

---

[14]"While a genuine issue of material fact exists as to the end amounts after setoff, a genuine issue of material fact does not exist as to either the existence of mutuality or as to the effect of setoff on Plaintiff's claims." (Docket 19, defendants' reply brief at 14).

17

offered by Shiloh "[t]o induce [Comerica] Bank to extend credit to the Company . . ."[15] (Docket No. 17, Exh. 2).  While plaintiff is right in noting that the intent of a contract should not be discerned by extrinsic evidence unless it cannot be determined by resorting to the document, the intent of the Letter Agreement is evident from the clear language of the agreement, itself.  Without question, the sole purpose of the Letter Agreement was to provide assurances to Comerica Bank to induce it to make a loan to plaintiff.

As defendants have noted, the debt to Comerica has been satisfied.  As part of the settlement with Comerica, VCS Prop. and Shiloh paid Comerica in full for the Mortgage Note.  (Docket No. 16, Exh. L, Termination of Shiloh Letter Agreement).  While plaintiff was a third-party beneficiary to the July 31, 2001 Letter Agreement, the only benefit plaintiff was to have derived from the agreement was the credit extended by Comerica.  Plaintiff has already reaped this benefit.  The Letter Agreement was never intended, however, to allow plaintiff to avoid being held accountable on its legitimate debts to defendants.  The clear language of the Letter Agreement simply does not support a finding to the contrary.  Moreover, plaintiff may not support its waiver argument on the rights of its creditors.  Plaintiff's unsecured creditors were not the intended beneficiaries of the Letter Agreement, nor can it be said that they reasonably relied, in any way, on the agreement.  Plaintiff cannot turn to the Letter Agreement to deny defendants their established right to setoff.

**IV.  CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment is denied in

---

[15]In another portion of the Letter Agreement, Shiloh represents that: "You have informed us that Bank may extend credit to the Company based, in part, on its accounts with respect to which we are the account debtor and that Bank will not extend certain credit to the Company unless we agree to waive certain rights of set-off and recoupment which we may have."  (Docket No. 17, Exh. 2).

its entirety. Plaintiff's Motion to Strike the affidavit of Thomas M. Dugan is also denied. Defendant's Motion for Partial Summary Judgment is granted in part and denied in part. Defendants are denied summary disposition of the fraud claims. Finally, defendants are granted summary judgment in their favor on the issue of whether they may assert the affirmative defense of setoff against plaintiff's contract claims, but are denied summary judgment as to the amount of the setoff.

**IT IS SO ORDERED**.

| | |
|---|---|
| September 29, 2006 | */s/ John R. Adams* |
| Date | John R. Adams |
| | U.S. District Judge |