ADAMS, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| VALLEY CITY STEEL, LLC, | ) | CASE NO.  5:05CV1902 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| v. | ) | |
| | ) | <u>MEMORANDUM OF OPINION</u> |
| LIVERPOOL COIL | ) | <u>AND ORDER</u> |
| PROCESSING, INC., et al., | ) | [RESOLVING DOC. 80] |
| | ) | |
| Defendants. | ) | |

This action is before the Court upon defendants Shiloh Industries, Inc., Shiloh

Corporation, and VCS Properties, LLC's Renewed Motion for Judgment as a Matter of Law or,

in the Alternative, for New Trial or to Amend Judgment (Doc. 80), filed on March 30, 2007.

The Court has reviewed the motion, memorandum in support (Doc. 81), memorandum in

opposition (Doc. 83), and reply memorandum (Doc. 84).  For the reasons that follow, the Court

will deny the motion.

### I.

Plaintiff Valley City Steel, LLC[1] ("plaintiff" or "debtor in possession") brought this

action against defendants Shiloh Industries, Inc. ("Shiloh"), Shiloh Corporation ("Shiloh

Corp."), and VCS Properties, LLC ("VCS Prop") (collectively "defendants") to recover damages

for constructive fraud, in violation of Ohio Rev. Code §§ 1336.04(A)(2)(a) and (b), and for

breach of contract.  The Court previously set forth the factual background in a Memorandum

Opinion and Order (Doc. 31).

---

[1]For convenience, and in conformance with the parties' pleadings, the Court will also use
the term "plaintiff" to refer to the debtor.

This matter was tried to a jury of eight members. Defendants' motion for judgment as a matter of law made at the close of all the evidence was denied and the action was submitted to the jury. Trial Transcript (Doc. 79) at 385-86; 395.[2] On March 16, 2007, at the close of a one-week trial, the following general verdicts accompanied by answers to interrogatories were returned by the jury:

> in favor of plaintiff against VCS Prop in the sum of One Million Six Hundred Ninety-three Thousand and 00/100 Dollars ($1,693,000.00) as damages on its fraudulent conveyance claim;
>
> in favor of plaintiff against Shiloh in the sum of One Million Six Hundred Ninety-three Thousand and 00/100 Dollars ($1,693,000.00) as damages on its fraudulent conveyance claim; and,
>
> in favor of plaintiff against Shiloh Corp. in the sum of One Million Two Hundred Ninety-two Thousand and 00/100 Dollars ($1,292,000.00) as damages on its fraudulent conveyance claim.

Doc. 77 at 8, 11, and 14. On April 2, 2007, the Court entered judgment in accordance with the jury's verdicts (Doc. 82).[3]

## II.

Defendants now renew their motion for judgment after trial (JNOV) pursuant to Fed. R. Civ. P. 50(b) or, in the alternative, request a new trial or amendment of the judgment pursuant to Fed. R. Civ. P. 59.

---

[2] Defendants' motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) made at the close of the plaintiff's evidence was also denied. Trial Transcript (Doc. 78) at 205.

[3] The jury also rendered a verdict in favor of plaintiff against defendant Sectional Stamping, Inc. in the sum of Two Hundred Sixty Thousand One Hundred Eighty-one and 44/100 Dollars ($260,181.44) as damages on its breach of contract claim and verdicts in favor of defendant Liverpool Coil Processing, Inc. and Shiloh Corp. on plaintiff's separate claims for breach of contract. The judgment entered on these three (3) claims is not at issue in the briefing of the current motion.

A.      *Motion for Judgment as a Matter of Law*

Defendants argue that they are entitled to judgment as a matter of law on plaintiff's claims of constructive fraudulent transfer.  According to the defendants, there is no legally sufficient evidentiary basis for a reasonable jury to have found (1) that plaintiff proved either constructive fraudulent transfer or damages, (2) that plaintiff's post-transaction assets were unreasonably small in comparison to its historical net assets, or (3) how to calculate damages or how damages should be allocated among the defendants.

The court will "consider[ ] the evidence in a light most favorable to the party against whom the motion is made, giving that party the benefit of all reasonable inferences," *Tuck v. HCA Health Services of Tennessee, Inc.*, 7 F.3d 465, 469 (6th Cir. 1993), "without weighing the credibility of witnesses or considering the weight of the evidence." *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1163 (6th Cir. 1990) (quoting *Gootee v. Colt Industries, Inc.*, 712 F.2d 1057, 1062 (6th Cir. 1983)).  The jury's verdicts must be supported by "substantial evidence." *Power-Tek Solutions Services, LLC v. Techlink, Inc.*, 403 F.3d 353, 358-59 (6th Cir. 2005).  If the evidence points so strongly in favor of the movants that reasonable minds could not reach a different conclusion, judgment as a matter of law is appropriate. *Jordan v. City of Cleveland*, 464 F.3d 584, 594 (6th Cir. 2006); *Cline v. U.S.*, 997 F.2d 191, 196 (6th Cir. 1993).  For the reasons that follow, the Court will allow the judgment--entered in accordance with the jury's general verdicts accompanied by answers to interrogatories--to stand.

Defendants are correct that the jury rejected plaintiff's claims under Ohio Rev. Code § 1336.04(A)(2)(b) that the defendants knew or should have known that the plaintiff would become insolvent as a result of the transaction.  *See* Answer to Jury Interrogatory No. 4 (Doc. 77

3

at 4).  Therefore, the general verdicts accompanied by answers to interrogatories on plaintiff's claims of constructive fraudulent transfer were based upon Ohio Rev. Code § 1336.04(A)(2)(a). The Court instructed the jury that, to establish this claim against the defendants, the plaintiff had to prove all of the following by a preponderance of the evidence:  (1) that the plaintiff transferred property to Shiloh, Shiloh Corp., and/or VCS Prop; (2) that the plaintiff did not receive a reasonably equivalent value in exchange for the transfer; (3) that the plaintiff had entered into or was about to enter a transaction for which it's remaining assets were unreasonably small in relation to the business or transaction; (4) that the plaintiff was harmed; and (5) that the conduct of Shiloh, Shiloh Corp., and/or VCS Prop was the proximate cause of plaintiff's harm.  Doc. 79 at 415-19.  According to the defendants, "Plaintiff failed to provide sufficient evidence of any of these elements of constructive fraudulent transfer."  Doc. 81 at 5.

Defendants argue that no reasonable jury could conclude that the plaintiff proved that it did not receive a reasonably equivalent value in exchange for the property it transferred.[4] Defendants state that only one appraisal of the fair market value of the property and equipment was introduced at trial--the $19.375 million Williams & Lipton valuation that the plaintiff and the other parties to the transaction relied upon at the time of the transaction in 2001.  *See* Deft. Ex. 10003.  Charles S. Deutchman, plaintiff's expert, embraced the $24 million net asset valuation, which incorporated the $19.375 million property valuation, in his trial testimony:

> Q.     So tell me then, what is the total amount of assets that were either contributed or sold to the entity?
> A.     27 million less the assumed liabilities of 3.6 million.  That's what was acquired and/or contributed.

---

[4]Given the existence of numerous genuine issues of material fact relating to the issue of reasonably equivalent value, the Court previously denied summary judgment to the defendants on the fraud claims. Doc. 31 at 11.

4

Doc. 78 at 96.  Moreover, Mr. Deutchman's balance sheet analysis of the transaction embraces this same valuation.  *See* Pl. Ex. 4892.  Finally, Mr. Deutchman conceded on cross-examination that he had no expertise to offer any contrary valuation:

> Q.      So you were aware that Williams & Lipton had taken the assets that Valley City Steel Company sold to Valley City Steel, LLC, the plaintiff, and appraised those on a fair market value basis at $19,374,935.
>                         Is that correct?
> A.      That's correct.
> Q.      Do you personally have any qualifications to appraise the assets that were transferred from Valley City Steel Company to the plaintiff?
>                         Have you done any property and equipment appraisals yourself?
> A.      No, I have not.

Doc. 78 at 112.  Mr. Deutchman also conceded that the $19.375 million was reflective of the value that the plaintiff paid for those assets.  *Id.* at 116.

Next, defendants argue that the plaintiff failed to prove that the transaction left it with unreasonably small assets, compared to its historical asset levels and current needs.  Defendants contend that plaintiff's proof at trial was insufficient as a matter of law in two respects.  First, the plaintiff's historical level of assets were undeniably smaller than they were after the leveraged buyout.[5]  Second, plaintiff failed to show that it was reasonably foreseeable that the leveraged buyout would fail.

Plaintiff's only historical assets were the $200,000 that Viking Steel LLC contributed to the newly formed entity in March 2001.  Mr. Deutchman acknowledged that Valley City Steel, LLC only had "[$]200,000 of liquid assets . . . from the inception" (Doc. 78 at 84) and had more

---

[5]Defendants' argument that Ohio Rev. Code § 1336.04(A)(2)(a) does not apply to this transaction (Doc. 81 at 8-9; Doc. 84 at 5) impermissibly asserts a ground that was not included in the earlier motions made at the close of the plaintiff's evidence and the close of all the evidence.  9B Wright & Miller, Federal Practice and Procedure:  Civil 3d § 2537, at 603-604 (2008) ("the district court only can grant the Rule 50(b) motion on the grounds advanced in the preverdict motion").

5

than $12 million in net assets after the transaction.  *Id.* at 117; 144-45.  According to the defendants, no rational jury could find $12 million to be unreasonably small in comparison to $200,000.[6]

The Court finds defendant's contention that plaintiff's proof at trial was insufficient as a matter of law to establish that Valley City Steel, LLC's projected revenues were unreasonable to meet current needs to be lacking in merit.  Defendants offered evidence in the form of testimony from Michael Klinginsmith, Steven Davis, and Richard Szekelyi showing that the plaintiff's projections were reasonable at the time of the transaction.  But, the plaintiff did more than present evidence that, in hindsight, the financial projections turned out to be incorrect.  The Court finds that the plaintiff offered evidence from which a reasonable jury could conclude that it was reasonably foreseeable that the plaintiff would fail.

Finally, defendants argue that the Court should enter judgment as a matter of law because the jury had insufficient evidence upon which to calculate or allocate damages between the defendants.  According to the defendants, plaintiff made no effort at trial to distinguish between Shiloh, Shiloh Corp., and VCS Prop, and no evidence was presented regarding how (let alone how much) each defendant harmed the plaintiff.  The Court agrees with the plaintiff that the evidence supports the jury's findings of multiple verdicts.

The Court finds that the evidence presented at trial permitted more than one reasonable conclusion.  Therefore, it is the holding of this Court that there is substantial evidence and

---

[6]When he was specifically asked on direct examination whether the plaintiff's remaining assets were unreasonably small, Mr. Deutchman testified that "They were not."  *Id.* at 101.  Defendants are correct that plaintiff's counsel did not raise the issue with this witness on redirect examination, but, plaintiff's counsel did argue in closing that Mr. Deutchman had misspoken (Doc. 79 at 441; 457).  *See also id.* at 384.  Furthermore, that answer lies in stark contrast to the remainder of his testimony that the plaintiff was short of capital to deal with its creditors.

testimony that supports the verdicts of the fact finder on plaintiff's claims of constructive fraudulent transfer.

B.      *Motion for New Trial*

Defendants argue, in the alternative, that the Court should order a new trial on the fraudulent transfer claims upon the grounds that the verdicts went against the manifest weight of the evidence.

The Court, in considering a motion for a new trial, must weigh the evidence, compare the opposing proofs, and set aside the verdict if it is of the opinion that the verdict is against the clear weight of the evidence. *J.C. Wyckoff & Associates v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1487 (6th Cir. 1991) (citing *TCP Industries, Inc. v. Uniroyal, Inc.*, 661 F.2d 542, 546 (6th Cir. 1981)).  The Court should deny the motion if the verdict is one which could reasonably have been reached.  *Id.*  The verdict is not unreasonable simply because different inferences and conclusions could have been drawn or because other results are more reasonable.  *Id. See also Duncan v. Duncan*, 377 F.2d 49, 52 (6th Cir.), *cert. denied*, 389 U.S. 913 (1967).  Further, where the verdict is reasonable, the motion should be denied "regardless of whether the trial judge might have reached a different conclusion were he the trier of fact."  *Wayne v. Village of Sebring*, 36 F.3d 517, 525 (6th Cir. 1994) (citing *U.S. v. L.E. Cooke Co.*, 991 F.2d 336, 343 (6th Cir.1993)).

In applying the standard of the Court of Appeals for the Sixth Circuit with respect to defendants' motion for a new trial to the evidence presented at trial, this Court must conclude that the general verdicts and answers to the interrogatories arrived at by the jury could have

reasonably been reached based upon the evidence presented at trial.  Based upon this finding, the Court will deny defendants' motion for a new trial.

C.      *Motion to Amend Judgment*

Finally, should the Court not grant defendants judgment as a matter of law, the defendants request pursuant to Fed. R. Civ. P. 59(e) that Doc. 82 be amended to prevent multiple damage awards for a single alleged harm.  Defendants move the Court for an order that, at a minimum, amends the  judgment to reflect a total damage award of $1,693,000.00 for which all three defendants are jointly liable.  In support of their argument, the defendants cite *Kramer Consulting, Inc. v. McCarthy*, No. C2-02-116, 2006 WL 581244, at *5-6 (S.D. Ohio March 8, 2006) (remitting jury award based on duplicative recovery).  Plaintiff argues to the contrary that the amounts awarded are not "clearly erroneous" and can not be said to represent multiple recoveries, because the total of the amounts awarded was less than the total amount which it sought to recover.

The jury was instructed:

> *You may find that more than one defendant is liable for a particular injury.*  If so, the plaintiff is not required to establish how much of the injury was caused by each particular defendant who[m] . . . you find liable.  Thus, *if you conclude that the defendants you find liable acted jointly, then you may treat them jointly for purposes of calculating damages.*
> *If you decide that two or more of the defendants are jointly liable on a particular claim, then you may simply determine the overall amount of damages for which they are liable[,] without determining individual percentages of liability.*

Doc. 79 at 426-27 (emphasis added).  Defendants complain that the jury interrogatories and general verdict forms that were prepared for the jury did not provide a place to identify total

8

damages.  Rather, the jury had to enter separate awards for each defendant.  Therefore, according to the defendants, the verdicts reflect multiple damage awards for one alleged harm.[7]

After reviewing all the evidence in the light most favorable to the plaintiff, the Court is not persuaded by defendant's conclusory argument that $2.985 million of the jury's total damage award amounts to an unlawful triple recovery for the plaintiff.  Therefore, the Court declines to amend the judgment.

III.

For the foregoing reasons, defendants Shiloh Industries, Inc., Shiloh Corporation, and VCS Properties, LLC's Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for New Trial or to Amend Judgment (Doc. 80) is DENIED.


IT IS SO ORDERED.


 May 12, 2008                                        /s/ John R. Adams
Date                                                John R. Adams
                                                    U.S. District Judge

---

[7]Plaintiff correctly notes at page eight of Doc. 81, however, that the jury received the interrogatories and separate general verdict forms substantially as drafted and requested by the defendants. *See Project Control Services, Inc. v. Westinghouse Savannah River Co., Inc.*, 35 Fed.Appx. 359, 365-66 (4th Cir.), *cert. denied*, 537 U.S. 1045 (2002) (invited error rule precluded the appellant from relying upon any alleged inconsistency in the jury's verdict in support of its challenge to the trial court's denial of its Rule 59(e) motion); *see also* Doc. 79 at 396 (defendants had no objections to the interrogatories).